IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE CO., *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: RDB 05-0324 |
| ZURICH INSURANCE CO., *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This action involves an insurance coverage dispute between Plaintiffs Liberty Mutual Insurance Co. ("Liberty") and AMG Realty Partners, LP ("AMG") and Defendants Zurich Insurance Co. ("Zurich") and CB Richard Ellis, Inc. ("Ellis"). Pending before this Court are cross-motions for summary judgment addressing whether Liberty, as the insurer for AMG, or Zurich, as the insurer for Ellis, is responsible for the insurance coverage for the personal injury claims of Helen Fields-Moore, who was allegedly injured when she tripped over an extension cord in the parking garage of a building that was owned by AMG and managed by Ellis. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties' submissions have been carefully reviewed. A hearing was conducted on December 2, 2005. For the reasons stated below, Liberty and AMG's Motion for Summary Judgment is GRANTED and Zurich and Ellis' Cross-Motion for Summary Judgment is DENIED.

## BACKGROUND

On March 1, 1999, AMG and Ellis entered into a Property Management Agreement ("PMA") relative to the management and operation of One Investment Place, Towson, Maryland 21204 (referred to in the PMA as "the Property"). (*See* Zurich's Mot. for Summ. J., Ex. 2.)

According to the PMA, Ellis is the "sole manager for the Property" and AMG is the "Owner." (*Id.*)  Among its numerous sections, the PMA includes cross-indemnification provisions that require, generally speaking, that Ellis indemnify AMG from liability arising from any negligent acts or omissions by Ellis or its agents, and that the opposite occur with respect to identical conduct by AMG or its agents.  (*Id.* at Art. 8.7.)

The PMA also requires each party to maintain insurance.  (*See* Zurich's Mot. for Summ. J., Arts. 4.1 & 4.2.)  Accordingly, AMG was covered by an insurance policy issued by Liberty's predecessor-in-interest, Employers Insurance of Wausau ("Wausau").[1]  The Wausau policy has the following limits: $2,000,000 for general aggregate other than products-completed operations; $2,000,000 for products-completed operations; $1,000,000 for personal and advertising injury; and $1,000,000 per occurrence.  (*See* Zurich's Mot. for Summ. J., Ex. 1.)  The Wausau policy extends coverage to any organization acting as AMG's "real estate manager." (*Id.* at Ex. 1, p. 10.)

Ellis was covered by an insurance policy issued by Zurich with the same limits as the Wausau policy.[2]  In addition, the Zurich policy extends coverage to:

> any person or organization with whom [Ellis has] executed a written contract prior to the occurrence of a loss with respect to liability arising out of the performance of that written contract between [Ellis] and that person or organization . . .

---

[1] Zurich and Ellis confirmed at the hearing that they do not contest that Liberty is Wausau's successor-in-interest.  (*Cf.* Zurich's Mot. for Summ. J., pp. 10 & 14.)

[2] Ellis apparently maintained commercial general liability insurance in the amount of $1,000,000 even though the PMA required Ellis to maintain such insurance "in an amount not less than $10,000,000." (Zurich's Mot. for Summ. J., Ex. 2, Art. 4.2.)  Liberty and AMG's counsel noted at the hearing, however, that this apparent failure to comply with the PMA is not at issue here because the personal injury claims in the underlying action amount to less than $1,000,000.

(Zurich's Mot. for Summ. J., Ex. 5.)

On March 2, 2000, Helen Fields-Moore was allegedly injured when she tripped and fell over an electrical extension cord in a parking garage located at One Investment Place, Towson, Maryland 21204.  (*See* Liberty's Mot. for Summ. J., Ex. 1.)  On February 5, 2003, Ms. Fields-More sued AMG, AMG's parking lot operator Landmark Parking, Inc. ("Landmark"), and other defendants in the Circuit Court for Baltimore County (the "Fields-Moore Action").  (*Id*.)  Although Ms. Fields-Moore later amended her complaint to include claims against Ellis, those claims were dismissed because they were barred by the applicable statute of limitations.  (*Id*. at p. 3.)  The Fields-Moore Action concluded when AMG and Landmark each paid one-third of a $175,000 settlement to Ms. Fields-Moore, who agreed to forego collecting the remaining portion of her settlement for twelve months or until after the conclusion of this litigation, whichever comes first.  (*Id*. at Ex. 14.)

On February 2, 2005, Liberty filed a complaint against Ellis and Zurich in this Court.  On February 3, 2005, Ellis filed a third-party complaint against AMG.  On July 18, 2005, this Court granted Liberty and AMG's Motion to Realign the Parties.  On June 3, 2005, Liberty and AMG filed a Motion for Summary Judgment.  On June 22, 2005, Zurich and Ellis filed a Cross-Motion for Summary Judgment.

LEGAL PRINCIPLES

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)), but the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

As there are pending cross-motions for summary judgment, this Court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v.*

*Appleman*, 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("neither party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

DISCUSSION

**I.      Primary Insurance.**

This Court first considers whether Liberty or Zurich holds primary insurance for Ms. Fields-Moore's personal injury claims. For reasons explained below, this Court finds that Liberty's insurance policy is primary.

As the parties acknowledged in their papers and at the hearing, both the Wausau and Zurich policies cover the personal injury claims of Ms. Fields-Moore. (*See*, *e.g.*, Liberty's Mot. for Summ. J., pp. 4 & 15; Zurich's Mot. for Summ. J., p. 21-22.) As a result, the policies' respective "excess insurance" provisions resolve which insurance is primary. Generally speaking, excess insurance provisions provide that the insurer is liable up to the limits of its policy only for the excess amount, if any, necessary to indemnify the insured after the other insurer has paid the full limit of its coverage. *See St. Paul Fire Ins. v. Am Int'l Spec. Lines*, 365 F.3d 263, 269-70 (4th Cir. 2004) (discussing "excess insurance" provisions).

Before considering the specific language of the excess insurance provisions in the Wausau and Zurich policies, this Court notes that:

> The Court of Appeals of Maryland has held that "[i]nsurance policies, being contractual, are construed as other contracts." *Bond v. Pennsylvania Nat'l Mu. Casualty Ins. Co.*, 424 A.2d 765, 768 (1981). *See also Nat'l Grange Mut. Ins. Co. v. Pinkney*, 399 A.2d 877, 882 (1979). Thus, the court interprets the policy provisions based on their plain meaning.

*Nat'l Indemnity Co. v. Continental Ins. Co.*, 487 A.2d. 1191, 1193 (Md. App. 1985).  (*See also* Liberty's Mot. for Summ. J., pp. 20-22 (applying Maryland law to interpret the insurance policies at issue here); Zurich's Mot. for Summ. J., p. 12 (same).)

The excess insurance provision in the Zurich policy provides:

> This insurance is excess over . . . (3) Any insurance policy which extends coverage to you as a real estate manager.

(Zurich's Mot. for Summ. J., Ex. 3, as amended by Endorsement 22.[3])  This language requires that Zurich is liable up to the limits of its policy only for the excess amount, if any, necessary to indemnify Ellis after the full limit of the Wausau policy has been paid.  (*See* Zurich's Mot. for Summ. J., Ex. 1, p. 10 (where Wausau policy extends coverage to any organization acting as AMG's real estate manager) & Ex. 2, Art. 1.1 (where PMA establishes that Ellis is AMG's real estate manager).)

The excess insurance provision in the Wausau policy provides:

> (a)  <u>Primary Insurance</u>.  This insurance is primary except when (b) below applies.  If this Insurance is primary, our obligations are not affected unless any of the other insurance is also primary. . .
>
> (b)  <u>Excess Insurance</u>.  This insurance is excess over: . . . (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement. . . .

(Zurich's Mot. for Summ. J., Ex. 1, pp. 13-14, as amended by Amendment of Other Insurance

---

[3]    Liberty and AMG argue that Endorsement 22 is not operative and that an unnumbered Endorsement (Form U-GL-113-B CW (4-89)), which contains a different excess insurance provision, controls.  (*See* Liberty's Mot. for Summ. J., pp.17-19.)  This argument is without merit.  As Zurich and Ellis point out, unnumbered Endorsement (Form U-GL-113-B CW (4-89)) was cancelled by Endorsement 12, which was in turn cancelled by Endorsement 22.  As a result, the language contained in Endorsement 22 governs whether the Zurich policy is considered excess insurance.  (*See* Zurich's Mot. for Summ. J., Ex. 3.)

Condition (Occurrence Version) Endorsement, CG 00 55 03 97.)

The excess insurance clause in the Wausau policy establishes that the Wausau policy provides primary insurance in relation to the Zurich policy. The Wausau policy provides that Liberty (as successor-in-interest to Wausau) is liable up to the limits of its policy only for the excess amount, if any, necessary for indemnification after the full limit of any other primary insurance available to AMG has been paid. This raises the question whether there is any other primary insurance available to AMG. The only candidate is the Zurich policy, but that policy is by its terms excess insurance for reasons already discussed. As a result, this Court finds that there is no other primary insurance available to AMG.

Accordingly, this Court finds that Liberty, as the insurer for AMG, holds primary insurance for the personal injury claims of Helen Fields-Moore. Having resolved the issue of primary insurance, this Court will consider the effect of the indemnification agreement between Ellis and AMG. For reasons explained below, the liabilities at issue in this case are fully resolved by that indemnification agreement and Zurich, as the insurer for Ellis, is responsible for the insurance coverage.

## II.     Indemnification.

Liberty and AMG argue that this insurance coverage dispute is resolved by the broad promise to indemnify AMG that was made by Ellis in the Property Management Agreement ("PMA"). In response, Zurich and Ellis argue that the scope of Ellis' promise is limited by other provisions of the PMA and that, as a result, Ellis is not required to indemnify AMG for the personal injury claims of Ms. Fields-Moore. Zurich and Ellis also argue that Ellis cannot be held responsible for the acts or omissions that led to Ms. Fields-Moore's injuries because Landmark Parking, Inc. ("Landmark"), a company that AMG hired to manage its parking garage, had

control of the electrical extension cord over which Ms. Fields-Moore tripped.

Before considering the language of the PMA's indemnification provision, this Court notes that:

> Maryland has long adhered to the law of objective interpretation of contracts. Under this principle, the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean. "Where the language of the contract is unambiguous, its plain meaning will be given effect. There is no need for further construction." An ambiguity arises when the language of the contract is susceptible of more than one meaning to a reasonably prudent person.

*See*, *e.g.*, *Auction Reps. v. Ashton*, 731 A.2d 441, 444-45 (Md. 1999) (quoting *Aetna Cas. & Sur. v. Insurance Comm'r*, 445 A.2d 527, 530 (Md. 1991)) (citations omitted). (*See also* Zurich's Mot. for Summ. J., Ex. 2, Art. 8.11 (where PMA provides that "[t]his Agreement shall be governed, construed, and interpreted by the laws of the State of Maryland.").)

The PMA contains the following indemnification agreement:

> 8.7 <u>Indemnification</u>.  A.  [Ellis] shall at all times indemnify and hold harmless [AMG], its partners, members, shareholders and its and their respective officers, directors, employees and agents from and against any and all claims, losses, liabilities, actions, proceedings and expenses (including reasonable attorneys' fees, disbursements and court costs) arising out of (i) any breach of the representations and warranties made by [Ellis] in this Agreement, or (ii) any negligent acts or omissions or willful and deliberate misconduct by [Ellis], its employees, contractors or agents.
>
> B.  [AMG] shall at all times indemnify and hold harmless [Ellis], its partners, members, shareholders and its and their respective officers, directors, employees and agents from and against any and all claims, losses, liabilities, actions, proceedings and expenses (including reasonable attorneys' fees, disbursements and court costs) arising out of (i) ownership or operation of the Property prior to the commencement of the term of this Agreement, or (ii) any negligent acts or omissions or willful and deliberate misconduct by [AMG], its employees, contractors or agents.

(Zurich's Mot. for Summ. J., Ex. 2, Art. 8.7.)  Liberty and AMG rely on two cases—*St. Paul*

*Fire Ins. v. Am Int'l Spec. Lines*, 365 F.3d 263 (4th Cir. 2004) and *Wal-Mart Stores, Inc. v. RLI Ins. Co.*, 292 F.3d 583 (8th Cir. 2002)—to argue that this dispute is resolved by the above indemnification agreement, not the "other insurance" or "excess insurance" provisions in the Zurich and Wausau policies. As the United States Court of Appeals for the Fourth Circuit explained:

> the general rule, as stated by a "leading commentator," is that "an indemnity agreement between the insureds or a contract with an indemnification clause . . . may shift an entire loss to a particular insurer notwithstanding the existence of an 'other insurance' clause in its policy."

*St. Paul Fire*, 365 F.3d at 270-71(quoting *Wal-Mart*, 292 F.3d at 588 and Lee R. Russ & Thomas F. Segalla, 15 *Couch on Insurance* § 219:1, at 219-7 (3d ed. 1999)).

Liberty and AMG's argument is straightforward: First, Ellis promised to indemnify AMG for any negligent acts or omissions by Ellis. Second, the personal injury claims allegedly suffered by Helen Fields-Moore were caused by the negligent acts or omissions of Ellis. Third, Zurich is bound by Ellis' promise to indemnify AMG. Therefore, Zurich and Ellis must indemnify AMG and Liberty for costs relating to the personal injury claims of Ms. Fields-Moore. (*See generally* Liberty's Mot. for Summ. J., pp. 4-15.)

Zurich and Ellis respond by claiming that Ellis' promise to indemnify AMG for "any negligent acts or omissions or willful and deliberate misconduct by [Ellis], its employees, contractors or agents" is limited by the PMA's waiver of subrogation provision, which provides:

> 4.4 <u>Waiver of Subrogation</u>. Any insurance carried by either party with respect to the Property or any occurrence thereon shall, if it can be so written without additional premiums or with an additional premium which the other party agrees to pay, include a clause or endorsement denying to the insurer rights of subrogation against the other party to the extent rights have been waived by the insured hereunder prior to occurrence of injury or loss. Each party, notwithstanding any provisions of this Management Agreement to the

9

>contrary, hereby waives any right of recovery against the other for
>injury or loss due to hazards covered by such insurance.

(Zurich's Mot. for Summ. J., Ex. 2, Art. 4.4.)  Zurich and Ellis' analysis begins by noting that, under the PMA's insurance provisions, the parties intended for AMG to furnish insurance that would cover all liability arising from the management and operation of the property.  Zurich and Ellis also emphasize that, under the PMA's waiver of subrogation provision, the parties released all claims against each other to the extent that AMG's insurance policy covers the underlying loss.  Consequently, "[t]he logical conclusion is that the mutual indemnification clauses were only meant to be operative in the event of a claim not covered by the insurance [provided by AMG]."  (Zurich's Mot. for Summ. J., p. 20.)

This Court is not persuaded by Zurich and Ellis' argument, which would render Ellis' promise to indemnify AMG meaningless.  The language of that promise is broad and all-encompassing: "[Ellis] shall at *all* times indemnify and hold harmless [AMG] . . . from and against *any and all* claims, losses, liabilities, actions, proceedings and expenses . . . arising out of . . . *any* negligent acts or omissions or willful and deliberate misconduct by [Ellis] . . ."  (Zurich's Mot. for Summ. J., Ex. 2, Art. 8.7 (emphasis added).)  According to Zurich and Ellis, however, Ellis promised to indemnify AMG against practically no claims or losses because, the indemnification agreement would become operative only *after* AMG's extensive insurance is exhausted.

This Court finds no contractual language suggesting that the parties intended the waiver of subrogation clause to essentially nullify the indemnification provision.  Although Zurich and Ellis point to language in the waiver of subrogation clause—"[n]otwithstanding anything in this agreement to the contrary"—this Court finds that this phrase is limited to the parties' agreement to waive subrogation rights and does not extend to the indemnification agreement.  *Cf. CSX*

*Transportation, Inc. v. Mass Transit Administration*, 683 A.2d 1127, 1132 (Md. App. 1996) (citing *Princemont Constr. Corp. v. Baltimore & Ohio R. Co.*, 131 A.2d 877, 879 (D.C. 1957) for the proposition that "when the terms of an indemnity agreement are broad and comprehensive, there is a presumption that 'if the parties had intended some limitation of the all-embracing language, they would have expressed such limitation. . . . If the parties wished to limit the scope of the language they could have easily done so; we are not at liberty to do it for them.'").

Zurich and Ellis provide no legal authority for their interpretation of the PMA's waiver of subrogation and indemnification provisions. Counsel for Zurich and Ellis suggested at the hearing that at least one industry publication could be viewed as supporting their interpretation. (*See* Zurich's Mot. for Summ. J., p. 23-24 (quoting International Risk Management Institute, Risk Mgt. and Multiline Publications, Contractual Risk Transfer, Section XVIII, Liability Insurance Requirements (2005))[4].) The excerpt referenced by Zurich and Ellis, however, stands for the proposition that property owners typically maintain general commercial liability insurance for managed properties and name property managers as insureds; it provides no

---

[4]   The passage from the International Risk Management Institute that Zurich and Ellis provided reads as follows:

> The traditional approach [in property management agreements] is . . . to require the owner to purchase and maintain CGL insurance applicable to the managed property and to include the property manager as an insured under that policy. This approach is supported by the fact that the standard CGL policy provides automatic insured status to the named insured's real estate manager, without the need for an endorsement . . . . Some risk management and insurance professionals strongly favor this approach, because they view it as a more efficient means of insuring and pricing the loss exposures, since standard CGL policies automatically include the property manager as an insured and standard CGL rating rules provide premium credits to property management firms whose policies are endorsed to provide excess coverage only over other insurance available to the property manager . . . .

support for the very different proposition that property management agreements typically contain indemnification provisions that are limited by waiver of subrogation provisions.  Even if one assumes that, as a general matter, property owners maintain extensive insurance and name their property managers as insureds, that would not prevent owners from, as in this case, negotiating favorable indemnification agreements with managers.  Accordingly, this Court finds that the scope of the PMA's indemnification provision is not limited by the scope of the PMA's waiver of subrogation clause.  Any contrary interpretation would defeat the intent of the parties.

　　　　　Finally, the Court notes that Zurich and Ellis initially contended in submissions to this Court that alternatively Ellis cannot be held responsible for the acts or omissions that led to Ms. Fields-Moore's injuries because Landmark had control of the electrical extension cord over which Ms. Fields-Moore tripped.  (*See*, *e.g.*, Zurich's Mot. for Summ. J., pp. 14-16; Zurich's Reply in Support of Mot. for Summ. J., pp. 6-7.)  This initial contention, however, does not establish a genuine issue of material fact with respect to the operation of the PMA's indemnification agreement.  As counsel for both parties agreed at the hearing, Ellis was responsible for managing, operating, and maintaining all aspects of the property, including the parking garage, Landmark, and any electrical cords that Ellis loaned to Landmark.  (*See*, *e.g.*, Zurich's Mot. for Summ. J., Ex. 2, Art. 4.4; Liberty's Mot. for Summ. J., Ex. 8.)  As a result, any dispute over the control of the electrical cord is irrelevant to Ellis' obligation to indemnify AMG "from and against any and all claims, losses, liabilities, actions, proceedings and expenses . . . arising out of . . . any negligent acts or omissions or willful and deliberate misconduct by [Ellis], its employees, contractors or agents."  (Zurich's Mot. for Summ. J., Ex. 2, Art. 8.7.)  Landmark was operating the parking garage under Ellis' management.  Thus, whether the cord was in the custody of Landmark or Ellis has no bearing on Ellis' responsibility for the operation of the

parking facility. Accordingly, this Court finds that the indemnification agreement in the Property Management Agreement requires that Ellis indemnify AMG for the personal injury claims of Ms. Fields-Moore.

## CONCLUSION

For the reasons stated above, AMG and Liberty's Motion for Summary Judgment is GRANTED and Zurich and Ellis' Cross-Motion for Summary Judgment is DENIED. A separate Order follows.


Dated: December 14, 2005               /s/_____
                                       Richard D. Bennett
                                       United States District Judge